**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DEEPIKA GONA**,

    *Plaintiff,*

**v.**                                                           **Case No. 1:20-cv-3680-RCL**

**UNITED STATES CITIZENSHIP AND**
**IMMIGRATION SERVICES**,

    *Defendant.*

---

**<u>MEMORANDUM OPINION</u>**

More than seven months ago, Deepika Gona applied to United States Citizenship and Immigration Services (USCIS) to renew her visa and authorization to work in the United States. Although Ms. Gona's work authorization expired almost three months ago, USCIS has not yet processed her applications. Since then, Ms. Gona has been unable to work or renew her driver's license, and her family has lost substantial income.

Ms. Gona sued. She alleges that the agency unreasonably delayed acting on her applications and improperly denied an automatic extension of her authorization to work. She now seeks a preliminary injunction to force the agency to process her applications within seven days. Mot., ECF No. 7.

Ms. Gona has failed to rebut the agency's assertion that it processes applications on a first-in, first-out basis. Thus, granting Ms. Gona the relief she seeks would necessarily mean advancing her application her over others waiting their turn in the queue. This the Court cannot do.

Upon consideration of the motion, briefs (ECF Nos. 7-1, 11, 12), exhibits (ECF Nos. 7-2–17, 11-1–2, 12-1), and all other papers of record, the Court will **DENY** the motion.

## I.   BACKGROUND

### A.  Statutory and Regulatory Background

Under the H-1B visa program, American employers may temporarily employ nonimmigrant aliens in certain specialized occupations. *See* 8 U.S.C. § 1101(a)(15)(H). Workers in these roles have "highly specialized knowledge" and have obtained at least a bachelor's degree (or equivalent experience). 8 U.S.C. § 1184(i)(1); 8 C.F.R. § 214.2(h)(4)(iii)(A). An alien may hold an H-1B visa for no more than six years, 8 C.F.R. § 214.2(h)(15)(ii)(B), unless he has been approved for an immigrant visa and is waiting for a visa to become available, American Competitiveness in the Twenty–First Century Act Of 2000, P.L. 106-313 § 106(a)–(b), 114 Stat. 1251, 1253–54 (codified in notes to 8 U.S.C. § 1184). In that case, the employer may seek an extension, and the visa is automatically extended while the extension request is pending. *See* 8 C.F.R. § 214.2(h)(2)(i)(H).

An H-1B visa holder's spouse and dependent children are entitled to admission to the United States as nonimmigrants under H-4 status. 8 C.F.R. § 214.2(h)(9)(iv). H-4 status derives from and lasts only as long as the underlying H-1B visa. *See id.* Unlike H-1B status, however, H-4 status does not automatically confer the right to work in the United States. *Id.* To be authorized to work, an alien with H-4 status must file a separate application for an employment authorization document. *Id.*; 8 C.F.R. § 274a.13.

When an H-4 visa holder wishes to renew both his visa and his work authorization, he must file separate applications with USCIS no sooner than 180 days before the visa and work authorization expire. *See id.* (Form I-765 to extend work authorization); 8 C.F.R. § 214.2(h)(9)(iv) (Form I-539 to extend visa). To process those applications, USCIS requires the applicant to submit biometric information. *See* 8 C.F.R. § 103.2(b)(9); Press Release, USCIS (Mar. 5, 2019), https://www.uscis.gov/news/alerts/update-uscis-to-publish-revised-form-i-539-and-new-form-i-

539a-on-march-8.  The agency cannot adjudicate an application for work authorization until it has adjudicated the application to renew the visa.  8 C.F.R. §§ 214.2, 274a.

### B.  Factual Background

Ms. Gona is an Indian national who lives in Rockville, Maryland.  Compl. ¶ 1.  Her spouse holds an H-1B visa, *see* Gona Decl. ¶ 3, ECF No. 7-5, and has been approved for an immigrant visa, *id.* at ¶ 4.  Ms. Gona, in turn, held an H-4 visa and employment authorization.  *See id.* at ¶¶ 5, 8, 13.  On July 9, 2020, she filed applications to renew both her visa and her employment authorization.  *Id.* at ¶¶ 5, 7.  USCIS has not yet acted on those applications.  *Id.* at ¶ 6.

On December 3, 2020, Ms. Gona's employment authorization expired.  *Id.* at ¶ 8.  The consequences for her have been grave.  Without valid employment authorization, Ms. Gona lost her driver's license.  *Id.* at ¶ 9; *but see* Md. Code § 16-122(a)(1).  And she has been unable to work as a computer developer for the State of Maryland, Gona Decl. ¶ 10, depriving her family of income equal to 44% of its monthly budget, *id.* at ¶¶ 11–12.  The record does not indicate how much income her family otherwise has to cover its expenses.

### C.  Procedural History

After she lost her eligibility to work in December 2020, Ms. Gona filed this action.  She alleged two causes of action under the Administrative Procedure Act.  In the first, she argues that USCIS improperly interpreted a regulation (codified at 8 C.F.R. § 274a.13(d)) denying her automatic extension of her employment eligibility.  *See* Compl. ¶¶ 89–97.  In the second, she argues that USICS unreasonably delayed processing her application.  *See id.* at ¶¶ 98–120.

Eight weeks after she filed her complaint, Ms. Gona moved for a preliminary injunction to compel USCIS to promptly adjudicate her applications.[1]  The Court allowed the government an extra week to respond to the motion.  *See* Order (Feb. 22, 2021), ECF No. 10.

## II.   LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "To obtain a preliminary injunction, the moving party must make a clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 101 (D.C. Cir. 2021) (internal quotation marks omitted).  When the government opposes a preliminary injunction, the final two factors merge because "the government's interest *is* the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.   ANALYSIS

### A.  Likelihood of Success on the Merits

Ms. Gona argues that she is entitled to a preliminary injunction because USCIS has unreasonably delayed in adjudicating her petitions.  In a case alleging unlawfully withheld agency action, the Court looks to six factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

---

[1] Because Ms. Gona does not address her § 274a.13(d) claim in her preliminary injunction filings, the Court construes her motion for a preliminary injunction as seeking only an order pertaining to her unreasonable delay claim.

> court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal

quotation marks and citations omitted).  The first factor is the most important, but each of the

factors merely provides "useful guidance" to determine whether the agency has unreasonably

delayed action.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*,

750 F.2d at 80).  The *TRAC* analysis is fact-intensive: "Resolution of a claim of unreasonable delay

is ordinarily a complicated and nuanced task requiring consideration of the particular facts and

circumstances before the court."  *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d

1094, 1100 (D.C. Cir. 2003).

The Court considers each of the factors in turn.

**1.  Rule of Reason (*TRAC* Factor 1)**

Under the first *TRAC* factor, the Court must determine whether the agency acts according

to a rule of reason.  Here, USCIS does.

USCIS says that it follows a simple rule of reason: it largely processes applications on a

first-in, first-out basis.  According to the agency, "[a]pplications adjudicated at the [Vermont

Service Center] are generally processed according to the date the application was properly filed

with USCIS subject to the biometrics requirement being complete as outlined below.  Applications

with an older filing date are generally processed before applications with a later filing date."

Kernan Decl. ¶ 2.  If the agency indeed follows that rule, it abides by a rule of reason.  *See Nibber*

*v. USCIS*, No. 20-cv-3207 (BAH), 2020 WL 7360215, at *5 (D.D.C. Dec. 15, 2020) (collecting

cases).  And, unless Ms. Gona can rebut the presumption of regularity, the Court must presume

that the agency follows its own rule.  *See Pharm. Research & Mfrs. of Am. v. FTC*, 790 F.3d 198,

212 (D.C. Cir. 2015); *see generally* Note, *The Presumption of Regularity in Judicial Review of the Executive Branch*, 131 Harv. L. Rev. 2431 (2018).

Ms. Gona contests UCSIS's assertion that it follows its first-in, first-out rule. She supports her argument with data about when USCIS received and processed applications from hundreds of H-4 applicants. *See* Pl.'s Ex. 1. That data comes from several of the USCIS's processing centers. *See id.* But the relevant data is only that from the Vermont Service Center, which is handling Ms. Gona's application.

Ms. Gona's data for the Vermont Service Center shows reasonably strong correlation between the order when an H-4 application is filed and when an H-4 application is actually adjudicated. A simple visual aid illustrates the point. The diagram below plots the order in which USCIS received applications at the Vermont Service Center on the x-axis and the order in which USCIS adjudicated the corresponding H-4 applications on the y-axis. The sold line indicates where the points should lie if the Vermont Service Center strictly followed a first-in, first out rule; the dotted line represents the actual trendline for the plaintiff's data. Points that appear above the solid line were processed after their "place in line;" points below the solid line, before their "place in line."



*See* Pl.'s Ex. 1.  The correlation between the order of filing and the order of adjudication is not

perfect.  But it does reflect a reasonably tight fit between the date an application comes "in" and

the date it goes "out."  *See also Kolluri v. USCIS*, No. 3:20-cv-02897-N, 2021 WL 183316, at *5

(N.D. Tex. Jan. 17, 2021) (reaching same conclusion based on same data).  The fact that a handful

of applications may have been adjudicated out of order does not establish that the agency ignores

its first-in, first-out process.  That is so especially as the agency has procedures for expedited

consideration and as the data may not provide a representative sample.  At this preliminary stage,

Ms. Gona's data does not clearly show that the agency fails to follow its rule of reason.

   Ms. Gona also offers testimony from a USCIS official at the Nebraska Service Center in

support of her claims.  That testimony, however, is irrelevant because it sheds no light on how the

agency processes applications at its Vermont Service Center.  Nor will the Court jettison the presumption of regularity based on potential inconsistencies in that testimony.

In sum, Ms. Gona has not disproven the agency's assertion that it follows a first-in, first-out process.  The first factor, therefore, supports USCIS.

### 2.  Congressionally Provided Timeline (*TRAC* Factor 2)

Under the second *TRAC* factor, the Court must determine whether Congress has provided a timeline for the agency's action.  Here, Congress has.

Congress expressed its expectation that processing petitions for immigration benefits should take no more than 180 days.  8 U.S.C. § 1571.  Ms. Gona's applications have languished for far longer.

The agency argues that the Congressional timeline is merely precatory.  That argument is both correct and meaningless.  The second factor requires only some "indication of the speed with which [Congress] expects the agency to proceed."  *TRAC*, 750 F.2d at 80.  Congress enacted a statute to provide that indication.  And the agency has failed to meet its benchmark.  *See Nibber*, 2020 WL 7360215, at *6.

The second factor supports Ms. Gona.

### 3.  Harm to Health and Welfare and Prejudice (*TRAC* Factors 3 and 5)

Under the third and fifth *TRAC* factors, the Court must determine whether the agency's delay harm human welfare or prejudice any interests.  Here, the agency's actions harm Ms. Gona's welfare and prejudice her interests.

Ms. Gona cannot work, and her family has gone without her income.  She cannot drive anywhere—to the grocery store, to a doctor's office.  These effects harm her family's welfare and prejudice Ms. Gona's interests.  *See Nibber*, 2020 WL 7360215, at *6.

USCIS's arguments to the contrary fall short.  The agency describes the effects as purely economic.  Not so.  *See id.*  The agency also argues that Ms. Gona's declaration does not support her contention that she is at risk of losing her job.  While Ms. Gona could more specifically support her claims, she need not prove permanent job loss to satify the third and fifth *TRAC* factors.

The third and fifth factors support Ms. Gona.

### 4.   Competing Priorities (*TRAC* Factor 4)

Under the fourth *TRAC* factor, the Court must determine whether ordering the agency to act would harm competing priorities.  Here, it would.

When an agency follows a first-in, first-out process, the Court is not in a position to push one application to the front of the line.  *See Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117–18 (D.D.C. 2005).  Here, "granting relief to the [p]laintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) (citing *Mashpee Wampanoag*, 336 F.3d at 1100; *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (1991)).

Ms. Gona's counterarguments cannot overcome this settled doctrine.  To the extent that Ms. Gona argues that the agency should prioritize her application, the Court cannot second-guess the agency's prioritization.  To the extent that Ms. Gona argues that the agency can adjudicate claims faster, the Court would still jump Ms. Gona's application in front of earlier applications if it granted her relief.

The fourth factor supports the agency.

### 5.   Bad Faith (*TRAC* Factor 6)

Under the sixth *TRAC* factor, the Court must determine whether the agency has acted in bad faith in delaying action.  Here, the evidence is inconclusive.

Ms. Gona suggests that some USCIS policies are arbitrary and thus unlawful. She may well prove correct in the end. But Ms. Gona has not directly challenged those policies here, and the Court lacks a sufficient record to establish whether the polices are lawful. At the same time, the record does not allow the Court to bless all the agency's visa-processing polices.

The sixth factor supports neither party.

\* \* \*

Ms. Gona has not shown that she is likely to prevail on the most important *TRAC* factors. She has not disproven the agency's contention that it follows a rule of reason. And so she has not shown how the Court could grant her motion without displacing other applicants from their places in the queue. Ms. Gona's failure to satisfy the first and fourth *TRAC* factors disposes of her unreasonable delay claim. *See In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). At this stage, therefore, Ms. Gona has not shown clearly that she is likely to succeed on the merits.

### B. Irreparable Harm

Ms. Gona argues that she will suffer irreparable harm absent an injunction because she faces the loss of income, which she cannot recover from the government.[2]

Financial losses constitute irreparable harm if they are certain, imminent, and unrecoverable. *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52–54 (D.D.C. 2011). Ms. Gona is not authorized to work. Therefore, she can no longer earn her salary. She has certainly already lost salary and will imminently lose more salary. Those loses are unrecoverable because the government enjoys sovereign immunity. Thus, Ms. Gona's loss of her salary is an irreparable harm.

---

[2] Ms. Gona also points to (a) her loss of her ability to drive and (b) her potential loss of her job. Ms. Gona's loss of her driver's license may well be remediable. *See* Md. Code § 16-122(a)(1). And the record does not contain enough evidence to support Ms. Gona's contention that she is at risk of losing her job. Therefore, neither of these injuries constitute irreparable harm.

The government argues that Ms. Gona has not proven that she has missed any work. Her declaration could be more specific and pellucid. But the government does not contest that Ms. Gona had a job. It cannot contest that she is unable to work. The Court will not ignore her harm because she failed to recite magic words in her declaration.

Ms. Gona has clearly shown that she will suffer irreparable harm.

### C. Balance of Equities/Public Interest

The public interest weighs against granting a preliminary injunction.

Jumping one applicant in front of other applicants in an agency's queue does not serve the public interest. *See Muvvala v. Wolf*, No. 1:20-cv-02423 (CJN), 2020 WL 5748104, at *6 (D.D.C. Sept. 25, 2020); *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006). Nor does reordering an agency's priorities. *See Muvvala* at *6. (citing *Barr Labs*, 930 F.2d at 76).

Thus, Ms. Gona has not shown that a preliminary injunction is in the public's interest.

\* \* \*

Because Ms. Gona has not demonstrated likelihood of success on the merits or that the preliminary injunction is in the public's interest, she has not met her burden.

## IV.   CONCLUSION

Based on the foregoing, the Court will deny the motion by separate order.

Date: _2/25/21_

Royce C. Lamberth
United States District Judge